THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK
LAFACE, Appellant.

County Court, Westchester County, June 22, 1933.

*Ackerman & Levet* [*Richard H. Levet* of counsel], for the appellant.

*Frank H. Coyne, District Attorney*, for the respondent.

COYLE, J. This is an appeal from a judgment of conviction of the Court of Special Sessions of the City of White Plains and the sentence imposed thereon. Appellant was not represented by counsel and when brought before the city judge pleaded guilty to the information. The information charged defendant with violation of section 148 of the Public Welfare Law. Defendant was sentenced to thirty days in the county penitentiary and fined $100. On this appeal appellant (1) attacks the validity of the judgment and (2) contends that the sentence, assuming the conviction valid, is excessive.

The basis of appellant's attack on the validity of the judgment is that the information is insufficient in that it does not set forth a violation of section 148 of the Public Welfare Law or the commission of any crime. A plea of guilty admits the facts charged in the information and no more. If the facts so charged do not constitute a crime, none is confessed. Appellant may properly attack the sufficiency of the information for the first time on appeal. (*People* v. *Fuchs*, 71 Misc. 69; *People* v. *Williams*, 135 id. 564.)

The information reads as follows: " That on the 6th day of December, 1932, at the said City of White Plains, in said County, one Frank LaFace 172 So. Lexington Avenue, did wilfully and unlawfully violate Section 148 of the Public Welfare Law of the State of New York, in that he did make false representations to the Charity Bureau of the City of White Plains in applying for work relief. Said defendant did represent to an employee of said charity department that he was in destitute circumstances and in particular that he had no money in any bank account, when as a fact he had over $6,500.00 in an account in the Home Savings Bank of White Plains. Said representations being false and designed to perpetrate a fraud on the Charity Bureau of the City of White Plains."

Section 148 of the Public Welfare Law is as follows: " Any fraud or false representation made by an applicant for relief, or by any person to secure relief for another person, or any wilful act designed to interfere with the proper administration of public relief and care, shall be a misdemeanor."

The Public Welfare Law was enacted by chapter 565 of the Laws of 1929 in lieu of the Poor Law which was repealed by the same chapter. It represents the mature effort of the State to provide for the administration of relief to its unfortunates who are unable to properly care for themselves. Under ordinary and normal conditions it was of sufficient scope to meet the demands of those who might be compelled to seek aid. But in 1931 the economic depression had become so acute that many of the people of the State found themselves without means of support and had no one to whom to turn except the State. An emergency existed and the State of New York took the lead, declared the existence of an emergency and passed the Emergency Relief Act, chapter 798 of the Laws of 1931 (also known as the Wickes Law), in an effort to relieve the distress which had come to so many.

Section 1 of the act reads, in part, as follows: " The public health and safety of the state and of each county, city and town therein being imperilled by the existing and threatened deprivation of a considerable number of their inhabitants of the necessaries of life, owing to the present economic depression, such condition is hereby declared to be a matter of public concern, state and local, and the correction thereof to be a state, county, city and town purpose, the consummation of which requires, as a necessary incident, the furnishing of public aid to individuals * * *. This act, therefore, is declared to be a measure for the public health and safety and occasioned by an existing emergency."

The act provided for two types of relief — " work relief " and " home relief." " Work relief " is defined in section 2 of the act as follows: "' Work relief ' means wages paid by a municipal corporation to persons, who are unemployed or whose employment is inadequate to provide the necessaries of life, and/or their dependents, from money specifically appropriated or contributed for that purpose during the emergency period for the performance of services or labor connected with work undertaken by such corporation, independent of work under a contract or for which an annual appropriation had been made."

The act was amended, with accompanying statutes, in 1932.

Unfortunately there are no decisions interpreting section 148 of the Public Welfare Law. It is the contention of appellant that " work relief " was unknown at the time of the enactment of section 148 and, therefore, does not come within the terms of the statute, and further that section 148 is part and parcel of the Public Welfare Law and applies only to the different types of relief therein provided for.

I am unable to agree with counsel's contention. The State, in

1931, by the enactment of the Emergency Relief Act, undertook a gigantic task, the relief of a large portion of its residents from the distress and hardships brought about by the depression. It is true that hitherto relief was principally confined to those who through accident or old age were permanently incapacitated. The act of 1931 was merely an enlargement of the relief undertaken by the State and is undoubtedly the result of universal recognition that society, acting through the State, must aid those who through no fault of their own find themselves in want. Such relief, whether " home relief " or " work relief," is clearly relief within the meaning of section 148. That section is general in scope and was intended to protect the people against any fraud or interference in the administration of its relief work. It speaks of " relief " and " public relief and care."

I am not unmindful of the rule that penal statutes must be given a strict interpretation. " But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature." ( *United States* v. *Lacher*, 134 U. S. 624.) Mr. Justice STORY, in *United States* v. *Winn* (3 Summ. 209, 211), said: " It appears to me that the proper course, in all these cases, is, to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." It is clear that the Legislature, in enacting section 148 of the Public Welfare Law, intended to protect the State and the people of the State from fraudulent practices in the administration of its " public relief and care." The reasons and necessity for such protection are obvious. It seems to me equally clear that if persons may without legal restraint obtain relief, whether " home relief " or " work relief," under the Emergency Relief Act, through fraudulent practices or fraudulent representations, the purposes of the statute would be frustrated. The relief work carried on under the Emergency Relief Act certainly comprises a large proportion of the entire " relief work " undertaken by the State.

In my opinion a construction which would limit section 148 of the Public Welfare Law in application to the types of " relief " known at the time of its enactment would be narrow and inimical to the very purposes which it sought to accomplish and contrary to the policy of the Legislature. It is reasonable to assume that the Legislature intended to prevent fraud in the administration of all

the " relief work " undertaken by the State or its subdivisions whatever the form of " relief."

Appellant urges also that the information is defective in that it alleges the defendant applied to the charity bureau of the city of White Plains, whereas, there is in fact no such bureau, the said bureau having been superseded in 1932 by a department of public welfare of the city of White Plains, headed by a commissioner of public welfare. The charity bureau of the city of White Plains had been superseded by the department of public welfare by only a few months, and the functions of the new department did not substantially differ from those of the charity bureau. The change was in effect in name only. While those well informed would refer to the department by its correct name, it was commonly referred to by the old title. It is true that the information was inadequately drawn in this respect, but that does not render it fatally defective. " An indictment is not considered insufficient by reason of any imperfection in matters of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. (*People* v. *Helmer*, 154 N. Y. 596, 600; *People* v. *Willis*, 158 id. 392, p. 396.) Nor does an error or mistake in an indictment render it invalid unless such error or mistake actually prejudices or tends to prejudice a substantial right of the defendant. (Code Crim. Pro. secs. 284, 285, 684.) The purpose of an indictment is to identify the charge against a defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense and also to notify him of the nature and character of the crime charged against him to the end that he may prepare a defense." (*People* v. *Williams*, 243 N. Y. 162.) The same in general applies to an information, although the same strictness is not required.

Upon appeal this court must render judgment without regard to technical errors or defects which have not prejudiced the substantial rights of defendant. (Code Crim. Proc. § 764.) It is difficult to see how the misnomer of the department could have misled appellant. Certainly the charge was sufficiently identified so as to prevent a subsequent charge against him for the same offense.

As to appellant's point that since " work relief " could only be obtained from the emergency work bureau the information sets forth the commission of no crime by alleging that the application was made to the charity bureau or the public welfare department, I am of the opinion that it is untenable. His argument stated in different form is that no fraud could be perpetrated on the emergency work bureau unless the application was made to it, and that no fraud could be perpetrated on the department of

public welfare by the applicant since it could not give out work relief. The difficulty with appellant's position is that the crime as defined under section 148 of the Public Welfare Law is not the consummation of fraud upon a particular department. The essence of the crime is the false representation in an application for relief. It makes no difference whether the relief is obtained or could have been obtained.

Turning now to the question of the propriety of the sentence. Counsel for appellant argues that the sentence imposed is excessive and urges this court to modify the same.

This court on appeal may review the propriety of the sentence even though it was one within the power of the trial court to impose. (Code Crim. Proc. § 764; *People* v. *Dinehart*, 155 App. Div. 687.) It may modify on the ground that the sentence is excessive. And the County Court may modify a sentence imposed if the court shall deem it in the furtherance of justice to do so. (*People* v. *Mulkins*, 25 Misc. 599.)

I am certain that the learned city judge was convinced of the propriety of the sentence imposed and I would hesitate to modify the same were I entirely convinced of defendant's guilt. One who would deliberately make fraudulent representations for the purposes of obtaining relief in times like the present, when the relief agencies of the State are already overtaxed, certainly merits a substantial punishment. For such an offense the sentence imposed would not be excessive. But from the actual facts of the case I have serious doubt as to appellant's guilt. Such facts, although not pertinent on this appeal to the question of the validity of the conviction (in view of defendant's plea of guilty), may well be considered in reviewing the justness of the sentence. (*People* v. *Wroldsen*, 228 App. Div. 838.)

The card signed by appellant was a printed form, supplied by the emergency relief administration. It was entitled "work relief financial data card" and was designed for the purpose of eliciting and recording data pertaining to the financial status of the applicant and his requirements. For example, it called for the following information: Name of applicant; members of his household; previous work record; estimated weekly needs; estimated weekly income and the assets of the applicant. The answers to the printed inquiries were written in the spaces provided therefor. At the bottom the appellant signed his name below the following printed statement: "I certify that the above information is true and correct." The card was then signed by the investigator for the department certifying that he was eligible to receive work relief. Singularly the inquiry — cash or bank savings — is answered neither "yes"

or " no." There is a mere dash. Had appellant answered this inquiry " no " or " none," I would say that he had deliberately perpetrated a fraud, and that his punishment was justified. But had he answered " yes " and stated the amount he would not have been put to work. The most important inquiry remained unanswered. Clearly the card contained no false statement.

It will be said that appellant pleaded guilty and thereby admitted his fraud. I do not think this necessarily follows. He was not represented by counsel. He can neither read nor write English. He may have believed that the fact of his having had a bank account in itself was such as to make a plea of guilty necessary.

So far as I have been able to discover he has no previous criminal record. He is not of the criminal class. He is married and has three children and has been frugal and industrious. He has already served four days in the county penitentiary on the sentence in addition to the fact that he worked four days with a pick and shovel for which he received no compensation.

In view of the serious doubt as to his guilt and of his previous good record I am conviced that the ends of justice will be met if the sentence is modified to the period already served and the fine remitted. Without question the effect upon the defendant of the knowledge that infractions of the law can be met with severity will impress upon him the wisdom of obedience to the law.

Judgment of conviction of the Court of Special Sessions of the City of White Plains affirmed and sentence imposed thereon modified to the period already served and fine remitted.