Barbara JAMES, individually and on behalf of her minor child, Maurice James, and on behalf of all other persons similarly situated, Plaintiffs,

v.

Jack R. GOLDBERG, individually and as Commissioner of the Department of Social Services of the City of New York; George K. Wyman, individually and as Commissioner of the State of New York Department of Social Services, Defendants.

No. 69 Civ. 2448.

United States District Court
S. D. New York.
Aug. 18, 1969.

David Gilman, Jonathon Weiss, Lee A. Albert, Nancy Duff Levy, Henry A. Freedman, New York City, for plaintiffs.

J. Lee Rankin, Corp. Counsel, City of New York, Leonard Bernikow, Asst. Corp. Counsel, Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Brenda Soloff, Asst. Atty. Gen., for defendants.

FEINBERG, Circuit Judge, and McLEAN, and TENNEY, District Judges.

TENNEY, District Judge:

## OPINION

Plaintiff, individually and on behalf of her minor child and all other persons similarly situated, seeks injunctive and declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and Section 1983, United States Code, Title 42, to secure rights, privileges and immunities under the Fourteenth Amendment to the Constitution of the United States, and Titles IV and XVI of the

Social Security Act, 42 U.S.C. §§ 601 *et seq.*, 1381 *et seq.*, and the regulations promulgated thereunder. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(3), (4), which provides for the original jurisdiction of district courts in suits authorized by 42 U.S.C. § 1983, and by 28 U.S.C. §§ 1331, 2201, 2202.

This suit, commenced by order to show cause on June 6, 1969, seeks to prevent the termination of Aid to Families with Dependent Children (hereinafter referred to as "AFDC") benefits for failure to consent to the entry into plaintiff's home of officials of the Department of Social Services (hereinafter referred to as "the Department") upon the grounds that such termination constitutes a violation of both plaintiff's right to be secure in her home from unreasonable searches thereof and of her right to privacy. By order dated June 13, 1969, D.C., 288 F.Supp. 519, the District Court Judge, after memoranda and affidavits had been submitted and oral argument had thereon: (1) ordered, pursuant to 28 U.S.C. §§ 2281, 2284, the convocation of a statutory three-judge district court to consider the substantial constitutional questions relating both to the Fourth Amendment's stricture against unreasonable searches and seizures and to the penumbral right of privacy and repose raised herein; (2) found that the action may properly proceed as a class action pursuant to Fed.R.Civ.P. 23; and (3) granted, pursuant to 28 U.S.C. § 2284(3), a temporary restraining order protecting plaintiff and the "class" she represents from the denial or termination of AFDC benefits based solely upon their refusal to consent to the entry of officials of the Department into their homes, pending the determination by the full court of plaintiff's application.

Thereafter, additional memoranda and affidavits were submitted, and, on June 30, 1969, oral argument was had before the three-judge court.

The facts underlying the issues presented reveal that plaintiff, a resident of the City and State of New York, Bronx County, has been a recipient of AFDC benefits for the past two years. On May 8, 1969, she received a letter from her caseworker requesting an appointment to visit her at home on May 14, 1969. Plaintiff replied that while she was willing to discuss issues and supply any information reasonable and relevant to her continued receipt of public assistance, under no circumstances could the caseworker make a home visit. The caseworker explained that Department regulations require that she visit plaintiff in her home to discuss the recertification of her case, and that refusal by plaintiff to permit such a home visit would result in the termination of her AFDC benefits. While reiterating her willingness to provide whatever information was requested at the offices of the Department, plaintiff continued to deny the caseworker entry into her home.

On May 13, 1969, the Department sent plaintiff a notice of intent to discontinue her AFDC benefits based upon her refusal to permit such a home visit. On May 27, 1969, a hearing held prior to the termination of public assistance was conducted at the offices of the Department. Thereat, plaintiff again reiterated her desire to supply information relevant to her present needs, but declined to discuss such needs in her home. The Department's review officer, after determining that such home visits were required by law, upheld the caseworker's decision to terminate benefits effective June 2, 1969.

In reaching this decision, the review officer relied upon Section 175 of the Policies Governing the Administration of Public Assistance, which, in pertinent part, provides:

"Mandatory visits must be made in accordance with law that requires that persons be visited at least once every three months if they are receiving Home Relief, Veteran's Assistance, or Aid to Dependent Children, and at least once every six months if they are receiving Old Age Assistance, Aid to the Disabled or Assistance to the Blind."

This Section was promulgated in accordance with Section 134 of the New York State Social Welfare Law, McKinney's Consol.Laws, c. 55,[1] and Sections 351.10, 351.21 of Title 18 of the New York Code of Rules and Regulations.[2]

In opposition to plaintiff's application for a permanent injunction restraining and enjoining the enforcement of these City and State Departments of Social Services Regulations on the grounds that they violate the First, Fourth, Fifth, Sixth, Ninth, Tenth and Fourteenth Amendments to the Constitution of the United States, defendants argue that: (1) the home visit is neither a search nor a seizure, but is merely designed to verify information as to eligibility for public assistance and is thus reasonably related to a valid governmental policy;[3] (2) the home visit is designed to make available to the recipient of AFDC benefits professional counseling so that the recipient can best utilize his limited resources;[4] (3) since the receipt of public assistance is a privilege, citing King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1166 (1968), plaintiff is obligated to provide necessary information so that this privilege can be recognized and implemented;[5] and (4) in contradictory statements, "[t]here may

be fraud * * * which should come to the attention of the administrative agency and which would not without home visits,"[6] and "[i]t is not the purpose of home visits to look for evidence of fraud or other criminal activity and there is no suggestion that entry is sought for these purposes."[7]

The issue presented for determination by this statutory court simply put, is whether the Department of Social Services can deny, reduce or terminate AFDC benefits to otherwise eligible persons who refuse to allow caseworkers to enter their homes without a warrant, issued upon probable case. For the reasons which follow, we find that the Department may not.

■ The Fourth Amendment to the Constitution explicitly affirms the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The overriding function and basic purpose of this Amendment is to safeguard the personal privacy, security and dignity of individuals against the arbitrary or unwarranted intrusion of governmental officials. Camara v. Municipal Court of the City & County of San Francisco, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L. Ed.2d 930 (1967); Schmerber v. Califor-

---

1. "The public welfare officials responsible * * * for investigating any application for public assistance and care, shall maintain close contact with persons granted public assistance and care. Such persons shall be visited as frequently as is provided by the rules of the board and/or regulations of the department * * * in order that any treatment or service tending to restore such persons to a condition of self support and to relieve the distress may be rendered and in order that assistance or care may be given only in such amount and as long as necessary."

2. "18 NYCRR 351.10. *Required Home Visits and Contacts.* Social investigation as defined and described * * * shall be made of each application or reapplication for public assistance or care as the basis for determination of initial eligibility.
 a. Determination of initial eligibility shall include contact with the applicant and at least one home visit which shall be

made promptly in accordance with agency policy. * * * "
 "18 NYCRR 351.21. *Required Contacts.* Contacts with recipients and collateral sources shall be adequate as to content and frequency and shall include home visits, office interviews, correspondence reports. * * * "

3. Memorandum of Law in Behalf of Defendant Wyman, dated June 26, 1969 at 5.

4. *Id.* at 17.

5. *Id.* at 26.

6. *Supra* note 4.

7. Memorandum of Law in Behalf of Defendant Wyman, *supra* note 3 at 31–32. By his affidavit of June 26, 1969, Leonard Bernikow, Assistant Corporation Counsel representing defendant Jack R. Goldberg, relies upon the brief submitted by the Attorney General for defendant George K. Wyman.

nia, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); United States ex rel. DeForte v. Mancusi, 379 F.2d 897, 903 (2d Cir. 1967), aff'd, Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). The Amendment gives concrete expression to a right of the people which "[is] basic to our free society." Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). As such, this right of privacy has been declared enforceable against the states through the Due Process Clause of the Fourteenth Amendment. Stanford v. Texas, 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); Ker v. California, 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ Except in certain carefully defined classes of cases,[8] a search of a private dwelling without a warrant or proper consent is presumptively "unreasonable". Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Camara v. Municipal Court of the City & County of San Francisco, *supra*, 387 U.S. at 528–529, 87 S.Ct. 1727; Frank v. Maryland, 359 U.S. 360, 380, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959) (Douglas, J., dissenting); Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Therefore, the following issues present themselves for determination: (a) are the home visits required by the Department of Social Services in connection with the initial and continuing finding of eligibility "searches" within the meaning of the Fourth Amendment; (b) was the Fourth Amendment designed to protect plaintiff and the "class" she represents; and

(c) assuming that (a) and (b) are answered in the affirmative, may the State condition the initial and continuing receipt of AFDC benefits upon a waiver of rights embodied in the Fourth Amendment?

■ Upon oral argument, the Attorney General urged that home visits could not be considered a "search" within the meaning of the Fourth Amendment in that caseworkers are instructed not to enter the home of an applicant for or recipient of benefits "without permission by force, or under false pretenses, and not to make a search of the home by looking into closets and drawers."[9] The Fourth Amendment, however, governs all intrusions by agents of the public upon personal privacy and security. Terry v. Ohio, 392 U.S. 1, 18, 88 S.Ct. 1868, 20 L.Ed.2d 889, n. 15 (1968). Any unauthorized physical penetration into the premises occupied by plaintiff is a search. In view of the fact that recent cases have expanded the scope of the Amendment so as to eliminate the necessity for a finding of an actual physical trespass upon a constitutionally protected area, Berger v. New York, 388 U.S. 41, 50–53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and the cases cited therein, defendant's restrictive argument would appear frivolous. The zone of privacy created by the Amendment encompasses the "sanctity of a man's home and the privacies of life" and therefore must consist of something more than his closets and drawers. Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886); see also Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

8. As Mr. Justice Douglas noted in his dissent in Frank v. Maryland, 359 U.S. 360, 380, 79 S.Ct. 804, 816 (1959):

"We have emphasized over and over again that a search without a warrant can be made only in exceptional circumstances. If a house is on fire or if the police see a fugitive enter a building, entry without a search warrant can of course be made."

Additionally, under recently restricted circumstances, a warrantless search may be made as incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

9. Letter from Jack R. Goldberg to Lee A. Albert, April 11, 1969, Appendix A of Suplemental Memorandum in Support of Plaintiffs' Motion for Preliminary and Permanent Injunction.

■ The Court in Camara v. Municipal Court of the City & County of San Francisco, supra, 387 U.S. at 530, 87 S.Ct. 1727, found that while a routine inspection of the physical condition of private property was a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime, nevertheless the community interest in municipal fire, health and housing inspection programs was not superior to the important interests safeguarded by the Fourth Amendment's protection against official intrusion. We find this dispositive of the first issue presented and, accordingly, home visits must be considered "searches" within the meaning of the Fourth Amendment.

■ The guarantee of protection against unreasonable searches extends to the innocent and guilty alike. McDonald v. United States, 335 U.S. 451, 453, 69 S.Ct. 191, 93 L.Ed. 153 (1948); see also Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), rehearing denied, 386 U.S. 940, 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967); Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), rehearing denied, 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967). Like most of the Bill of Rights, the Fourth Amendment was not designed to be a shelter for criminals, but a basic protection for everyone. It reaches all, whether accused of crime or not. Abel v. United States, 362 U.S. 217, 254–256, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (Brennan, J., dissenting); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Since the most effective preventive against unlawful searches is the exclusion of their fruits from criminal evidence, this right must be upheld when asserted by those who transgress the law. But it cannot be inferred from this that the central thrust of the guarantee is to protect against a search for such evidence. "It is the individual's interest in privacy which the Amendment protects, and that would not appear to fluctuate with the 'intent' of the invading officers." Abel v. United States, supra, 362 U.S. at 255, 80 S.Ct. at

705. As Judge Prettyman argued in District of Columbia v. Little, 85 U.S. App.D.C. 242, 178 F.2d 13, 16–17, 13 A. L.R.2d 954 (1949), aff'd on other grounds, 339 U.S. 1, 70 S.Ct. 468, 94 L. Ed. 599 (1950):

"[T]he common-law right of a man to privacy in his home * * * is one of the indispensable ultimate essentials of our concept of civilization. It was firmly established in the common law as one of the bright features of the Anglo-Saxon contributions to human progress. It was not related to crime or to suspicion of crime. It belonged to all men, not merely to criminals, real or suspected. * * * To say that a man suspected of crime has a right to protection against [the] search of his home without a warrant, but that a man not suspected of crime has no such protection, is a fantastic absurdity."

Judge Prettyman added that the Fourth Amendment applied to health inspectors as well as to police officers—indeed to every and any official of government seeking admission to any home.

"We emphasize that no matter who the officer is or what his mission, a government official cannot invade a private home, unless (1) a magistrate has authorized him to do so or (2) an immediate major crisis in the performance of duty affords neither time nor opportunity to apply to a magistrate. This right of privacy is not conditioned upon the objective, the prerogative or the stature of the intruding officer. His uniform, badge, rank, and the bureau from which he operates are immaterial. It is immaterial whether he is motivated by the highest public purpose or by the lowest personal spite."

Judge Prettyman's argument was first accepted by Mr. Justice Douglas in his dissent to the Opinion of the Court in Frank v. Maryland, supra, 359 U.S. at 377–378, 79 S.Ct. 804, 3 L.Ed.2d 877. Subsequently, Frank was overruled by Camara, wherein the Court approved Judge Prettyman's holding by finding that "[i]t is surely anomalous to say

that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. * * * [E]ven the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority * * *." [10]

■■ Therefore, governmental power to make a warrantless search is no greater even if the object of the search is not related to the discovery of evidence of welfare fraud or other criminal activity. Abel v. United States, *supra*, 362 U.S. at 254–256, 80 S.Ct. 683; Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 408 (S.D.Iowa 1968). To attempt to draw a distinction regarding the applicability of the Amendment dependent upon whether the caseworker intends to counsel the recipient as to how best to utilize his limited resources or to look for evidence of fraud, would invite a trial of every official's purpose—a task which would undoubtedly pervert the intent of the Amendment. There exists no valid reason for varying the protection afforded by the Amendment even assuming that the home visit is an effort to deal with a purely "social problem". See Verdugo v. United States, 402 F.2d 599, 611 n. 20 (9th Cir. 1968). Accordingly, plaintiff and the "class" she represents must be afforded the guarantees of the Fourth Amendment.

■■ Even if we assume that AFDC grants are a privilege or governmental gratuity,[11] the power of government to decline to extend these benefits to its citizens "does not embrace the supposedly 'lesser' power to condition the receipt of those benefits upon any and all terms." Parrish v. Civil Service Comm'n of the County of Alameda, 66 Cal.2d 260, 57 Cal.Rptr. 623, 630, 425 P. 2d 223 (1967). For to deny plaintiff even a gratuitous benefit because of the exercise of a constitutional right effectively impedes the exercise of that right. Thompson v. Shapiro, 270 F.Supp. 331, 336 (D.Conn.1967), aff'd, 389 U.S. 1032, 88 S.Ct. 784, 19 L.Ed.2d 820 (1969). While this Court clearly recognizes the necessity of and desirability for procedures which will enable the Department of Social Services to administer its programs with a minimum of loss due to fraudulent claims or the unwise allocation of these grants by deserving but inexperienced recipients to the end that the limited funds provided by government may best be used to relieve the needs of those persons in actual want, see 81 C.J. S. Social Security & Public Welfare § 9, n. 70 (1953), when the conditions annexed to the enjoyment of these benefits require a waiver of rights secured by the Constitution, the governmental entity seeking to impose those conditions must show a compelling state interest therefor. No showing merely of a rational relationship to some valid governmental policy will suffice. Sherbert v. Verner, 374 U. S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Wieman v. Updegraff, 344 U.S. 183, 191–192, 73 S.Ct. 215, 97 L.Ed. 216 (1952); American Communications Ass'n v. Douds, 339 U.S. 382, 390, 70 S. Ct. 674, 94 L.Ed. 925 (1950); Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945). Nor will it suffice for the state to show merely that the

10. Camara v. Municipal Court of the City & County of San Francisco, 387 U.S. 523, 530–531, 87 S.Ct. 1727, 1732 (1967).

11. Recent scholarship has urged that the distinction between "rights" which are said to be vested and "privileges" which are said to be a mere government gratuity, be abolished. French, Comment: Unconstitutional Conditions: An Analysis, 50 Geo.L.J. 234, 236–39 (1961). Professor Charles Reich's theory of "entitlement" suggests that welfare benefits are no longer gratuities but have assumed at least some of the characteristics of "rights". Reich, Individual Rights and Social Welfare: The Emerging Legal Issues, 74 Yale L.J. 1245 (1965); Reich, The New Property, 73 Yale L.J. 733 (1964). See O'Neill, Unconstitutional Conditions: Welfare Benefits With Strings Attached, 54 Calif.L.Rev. 443 (1966).

public interest justifies the type of search in question. For the issue is not whether the public interest justifies home visits, but whether the initial or continued receipt of AFDC benefits can in consonance with the Constitution be made dependent upon the applicants' or recipients' submission to *warrantless* searches.[12]

The public interest may demand creation of a general exception to the Fourth Amendment's warrant requirement only when it can be demonstrated "that there are available no alternative means less subversive of constitutional right, narrowly drawn so as to correlate more closely with the purposes contemplated by conferring the benefit." Parrish v. Civil Service Comm'n of the County of Alameda, *supra*. Permissive legislative goals may not be pursued by means that significantly inhibit fundamental personal liberties when the end can be more narrowly achieved. Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). This Court cannot with deference to the Fourth Amendment excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation make that course imperative. Terry v. Ohio, *supra*; Berger v. New York, *supra*, 388 U.S. at 114, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (White, J., dissenting); McDonald v. United States, *supra*, 335 U.S. at 456, 69 S.Ct. 191, 93 L.Ed. 153; see also Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct.

616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed. 2d 574 (1967). No such showing has been made herein.[13]

Less drastic means may be suggested for achieving the same basic purposes for which the City and State urge home visits are designed. Proof of actual residence may be ascertained, for example, by the submission of a duly-executed lease upon the premises in question. Family composition may be verified by the submission, in this instance, of birth certificates. The physical well-being of the child could be safeguarded by making available facilities for periodic medical examinations rather than by requiring routine home visits by caseworkers. This is especially true since there is no assurance that the child will even be present when the home visit is made. Information regarding goods or services which the recipient may need in the management of her home can equally be obtained in the offices of the Department should the recipient wish to make her needs known there rather than in the convenience of her home. The regularity of school attendance, academic achievement and information gathered from interviews with school personnel can more accurately reflect the effects of a child's home environment than an interview with his or her parent in the home.

Should any of these factors or other circumstances or evidence indicate the propriety of or necessity for the search of private property in a particular case, application may be made to an appropriate judicial officer who, utilizing the standard of "probable cause", will

---

12. An analogy may be drawn between the listing of dependents on an income tax return and the listing of dependent children on applications for public assistance. Yet, could it be successfully argued that the right to obtain an income tax exemption for such dependents may lawfully be made dependent upon the taxpayer's consent to the warrantless entry into his home of Internal Revenue Service Agents?

13. In this respect it should be noted that the Department of Health, Education and

Welfare has proposed the elimination of individual investigations, except for spot checks, and the substitution of a declaration system under which the "agency accepts the statements of the applicant for or recipient of assistance, about facts that are within his knowledge and competence * * * as a basis for decisions regarding his eligibility and extent of entitlement." Dept. of HEW, Determination of Eligibility for Public Assistance Programs, 33 Fed.Reg. 17189 (1968).

test the particular decision to search against the constitutional mandate of reasonableness. Should this official determine that a valid public interest justifies the intrusion contemplated, then there exists probable cause to issue a suitably restricted search warrant. In this respect, it must be noted that the Court in Camara v. Municipal Court of the City & County of San Francisco, *supra*, 387 U.S. at 539, 87 S.Ct. at 1736, emphasized that "a health official need [not] show the same kind of proof to a magistrate to obtain a warrant as one must who would search for the fruits or instrumentalities of crime." This would appear applicable to the instant proceedings.

As previously indicated, the Attorney General has suggested that it is not the purpose of the home visit to look for evidence of criminal activity. This Court, however, must take notice of Section 145 of the Social Welfare Law, which provides that:

"Any person who by means of a false statement or representation, or by deliberate concealment of any material fact, or by impersonation or other fraudulent device, obtains or attempts to obtain, or aids or abets any person to, obtain public assistance or care to which he is not entitled, or does any wilful act designed to interfere with the proper administration of public assistance and care, shall be guilty of a misdemeanor, unless such act constitutes a violation of a provision of the penal law of the state of New York, in which case he shall be punished in accordance with the penalties fixed by such law. Failure on the part of the person receiving public assistance or care to notify the public welfare official granting such assistance or care of the receipt of

money or property or income from employment or any other source whatsoever, shall, upon the cashing of a public assistance check by or on behalf of such person after the receipt of such money, or property, or income, constitute presumptive evidence of deliberate concealment of a material fact. *Whenever a public welfare official has reason to believe that any person has violated any provision of this section, he shall refer the facts and evidence available to him to the appropriate district attorney or other prosecuting official.*" (Emphasis added.)

The Court in People v. La Face, 148 Misc. 238, 266 N.Y.S. 458 (Westchester County Ct. 1933) found that "the crime as defined under section 148 of the Public Welfare Law," a section substantially identical to Section 145 of the present Social Welfare Law,[14] "is not the consummation of fraud upon a particular department. The essence of the crime is the false representation in an application for relief. It makes no difference whether the relief is obtained or could have been obtained." The breadth of the interpretation given the fraud statute in *La Face*, coupled with the fact that this Court must assume that caseworkers will comply with the provisions of Section 145 by referring facts or evidence of welfare fraud gathered by them in the course of home visits to the appropriate prosecuting official, sustains the view that home visits may appropriately be considered searches for evidence of welfare fraud or other criminal activity.[15] As such, they become unauthorized intrusions upon the sanctity of plaintiff's home when consent thereto is not freely given.

Defendants argue further that plaintiffs must first exhaust available

14. Section 148 of the Public Welfare Law provided:

"Any fraud or false representation made by an applicant for relief, or by any person to secure relief for another person, or any wilful act designed to interfere with the proper administration

of public relief and care, shall be deemed a misdemeanor."

15. See also, in this context, 42 U.S.C. § 602(a) (16), (17), (18) ; N.Y. Penal Law, McKinney's Consol.Laws, c. 40, 155.00 *et seq.*; 18 NYCRR 347, 348, 351.1.

administrative remedies prior to seeking a federal forum. However, one of the purposes of the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, is "to provide a remedy in the federal courts supplementary to any remedy any State might have." McNeese v. Board of Ed., 373 U.S. 668, 672, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963). Relief under the Civil Rights Act may not, therefore, be defeated for failure to exhaust available state administrative remedies. Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y. 1968).

The Court of Appeals for the Second Circuit in the recent decision in Colonnade Catering Corp. v. United States, 410 F.2d 197 (2d Cir., filed March 26, 1969) upheld a warrantless search by Internal Revenue Service agents of a catering establishment which held a New York State liquor license. In reversing the district court's order suppressing certain evidence seized, the Court of Appeals went to great lengths to distinguish Camara and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The Court found that in contrast to the broad delegation of inspection power authorized in Camara and See, the statutory grants of inspection power under review were carefully defined and narrowed so that they granted "little, if any, more authority than that which would be extended in a warrant issued by a magistrate after review." We find no such limitations upon the power of caseworkers to enter and search the homes of applicants for or recipients of public assistance. It is not sufficient that caseworkers are instructed not to enter by force or under false pretenses and not to look in closets and drawers.

Further, the Court of Appeals noted that "[d]ealers in liquor, unlike homeowners or businessmen conducting less specialized activities, are engaged in a heavily regulated business," (emphasis added) and, therefore, as "sophisticated licensees * * * are undoubtedly acquainted with the limits upon the agent's inspection rights." No such presumptions may properly be made herein. Defendant's reliance on Colonnade is, therefore, misplaced.

Accordingly, we find that the City and State may not condition the initial and continuing receipt of AFDC benefits upon a waiver of rights embodied in the Fourth Amendment. A contrary holding would threaten to "produce a result which the State could not command directly." Speiser v. Randall, supra, 357 U.S. at 526, 78 S.Ct. at 1342.

Doubtless there exists a pressing State interest in preventing such anti-social behavior as child abuse or neglect. But we see no reason why, in this respect, all families should not be treated alike. Specified procedures now exist under which the State can intervene in such circumstances to determine whether a child is neglected and, should such a finding be made, to regulate the neglected child's home or, if necessary, remove him from his home to insure that his needs are properly cared for.[16]

It is hoped that caseworkers will continue to be welcomed into the homes of welfare recipients so that their professional expertise may most effectively be utilized to the greatest advantage of their "clients". However, when entry is barred, benefits may not be denied or terminated solely on this basis.

This Court recognizes the importance of eliminating from welfare rolls those whose receipt of benefits is undeserved. Such efforts, however, must be, and clearly can be, conducted with due regard for the constitutional rights of welfare recipients. The laudable goal of beneficially supervising the expenditure of public funds will not be hindered or prejudiced by compliance, when necessary, with the Fourth Amendment's warrant procedure.

16. Family Court Act, Art. 3 (McKinney 1963).

**946**

The oft-quoted protest of William Pitt would appear particularly, if not ironically, sound:

> "The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail—its roof may shake—the wind may blow through it—the storm may enter, the rain may enter—but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!"

Plaintiffs' motion for a permanent injunction is granted. Submit order, on notice, in conformity herewith.

McLEAN, District Judge (dissenting).

I am unable to agree with the court's conclusion in this case. We are concerned here with a program of public assistance to dependent children who are to be cared for in their own homes. 42 U.S.C. § 601. It is essential that the welfare workers who administer this program enter the children's home to ascertain the conditions under which they live. The purpose of the visit is to assist the children, not to catch the children's mother in a violation of the law. To my mind it is unrealistic to regard this visit as a "search," and even more so to hold it to be an unreasonable search.

The court's opinion does not make clear what showing is to be made to obtain the warrant which the court considers necessary. If a warrant can issue only upon a showing of probable cause that the law has been violated, then the fundamental purpose of the program is ignored. Aid to dependent children becomes in effect another criminal statute. If, on the other hand, the welfare worker can obtain a warrant merely by pointing out the need to inspect the home in order to carry out her duties, then the warrant is a mere formality. The need is evident. A welfare worker's time should not be wasted in elaborating the obvious. Reading leases (if in fact there are any), birth certificates, school records and the like, cannot be an adequate substitute for first-hand observation of living conditions in the home.

What the warrant will do, in my opinion, is to introduce a hostile arm's length element into the relationship between the welfare worker and the mother of the children, a relationship which can be effective only when it is based upon mutual confidence and trust.

*Camara* and *See* involved true searches. Those cases are distinguishable on their facts from this one. They do not require the result which the court has reached here. The court has extended the doctrine of those cases in order to reach this result, thereby striking a damaging blow to the successful administration of this important social welfare program.

I would deny the motion and dismiss the action.