Beverly LAPREASE, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

RAYMOURS FURNITURE COMPANY, Inc., Individually and on behalf of all other persons similarly situated, and Louis Engle and Patrick Corbett, individually and as non-judicial personnel and enforcement officers of the Courts of the State of New York and on behalf of all other persons similarly situated, Defendants.

Clifford LAWSON, Judith Lawson and Joan Messler, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Michael GALVIN and Earl Stoddard, In their capacity as City Marshals of the City of Albany, on behalf of themselves and all others similarly situated, Edward M. Fischer, in his capacity as Sheriff of Albany County, on behalf of himself and all others similarly situated, and Louis J. Lefkowitz, in his capacity as Attorney General of the State of New York, Defendants.

Nos. 70–CV–16, 70–CV–50.

United States District Court, N. D. New York.

July 29, 1970.

Onondaga Neighborhood Legal Services, Inc., Syracuse, N. Y., for plaintiff Laprease; Barbara B. Gregg, Syracuse, N. Y., of counsel.

Edward P. Kearse, Corp. Counsel, City of Syracuse, Syracuse, N. Y., for defendant Engle; Carl W. Dengel, Asst. Corp. Counsel, Syracuse, N. Y., of counsel.

William H. Welch, Syracuse, N. Y., for defendant Corbett.

Lawrence F. Klepper, Legal Aid Society of Albany, Inc., Albany, N. Y., for plaintiffs; Joel F. Spitzer, Albany, N. Y., Dennis B. Schlenker, Catskill, N. Y., David L. Corbin, Albany, N. Y., of counsel.

John W. Hacker, Corp. Counsel, City of Albany, Albany, N. Y., for defendants Galvin and Stoddard; George N. Meyl, Albany, N. Y., of counsel.

John J. Clyne, Albany County Atty., Albany, N. Y., for defendant Fischer.

Louis J. Lefkowitz, pro se; John Q. Driscoll, Asst. Atty. Gen., of counsel.

New York State Council of Retail Merchants, by Weil, Gotshal & Manges, New York City, amicus curiae.

General Motors Acceptance Corp. by Ross L. Malone, Gen. Counsel, New York City, amicus curiae.

C.I.T. Financial Corp. by Arthur L. B. Richardson, Gen. Counsel, New York City, amicus curiae.

Ford Motor Credit Corp. by Wright Tisdale, Gen. Counsel, Dearborn, Mich., amicus curiae.

Chrysler Credit Corp., by Bookstein, Zubres & D'Agostino, Albany, N. Y., amicus curiae.

New York State Sheriff's Assn. by Edward G. Dillon, Albany, N. Y., amicus curiae.

New York State Bankers Assn. by Cravath, Swaine & Moore, New York City, amicus curiae; John W. Barnum, Richard S. Simmons, Howard G. Kristol, New York City, of counsel.

White Motor Corp. by Lynn, Burke & Lynn, Albany, N. Y., amicus curiae; Morton M. Z. Lynn, Albany, N. Y., of counsel.

Before FEINBERG, Circuit Judge, and FOLEY and PORT, District Judges.

PORT, District Judge.

In the above-entitled actions, consolidated for hearing, the plaintiffs seek to enjoin the defendants from enforcing Article 71 [1] of the New York Civil Practice Law and Rules. That Article governs the procedure in a replevin action, and permits the prehearing seizure of the subject matter of the action without the intervention or order of a judicial officer.

Temporary restraining orders were issued in each case restraining the defendants from making seizures pursuant to the provisions of Article 71 [2] and three-judge courts were designated and convened pursuant to 28 U.S.C. § 2281 et seq.

After hearing argument, the three-judge court in each case continued by stipulation injunctions against seizure from the named plaintiffs by the named defendants pursuant to the provisions of Article 71, except when done by an order of a judge or court of competent jurisdiction. The court also refused to continue the actions as class actions. It was stipulated upon the oral argument that the application for temporary and permanent injunctive relief be heard and decided upon the record before the court without the taking of any oral evidence.

## THE STATUTORY SCHEME

Article 71 provides for the bringing of an action "to try the right of possession of a chattel," historically known as a *replevin* action. It mandates that the Sheriff, upon delivery to him by the plaintiff in the action of an affidavit, undertaking and requisition [which is deemed to be the mandate of the court], seize the chattels described in the affidavit. If an action to recover the chattel has not been commenced, the statute requires that there be additionally delivered to him a summons and a complaint.

The requisition directs the Sheriff of any county where the chattel is found, to seize it. The Sheriff is obliged to serve upon the person from whose possession the chattel is seized, "a copy of the affidavit, requisition and undertaking delivered to him by the plaintiff." The statute does not by its terms require the Sheriff to serve the summons and complaint, which may have been delivered to

1. Article 71 is set forth in full in the Appendix.

2. Judge Port granted, pursuant to 28 U. S.C. § 2284(3), a temporary restraining order dated February 18, 1970, enjoining the named defendants in *Laprease*, Engle and Corbett, from seizing any chattels in the possession of the named plaintiffs or the class plaintiffs pursuant to the pretrial replevin provisions of Article 71, except pursuant to an order of a judge or court of competent jurisdiction authorizing such seizure, pending the hearing and determination of this claim by the full court.

Judge Foley's temporary restraining order, dated February 18, 1970, enjoined the defendants in *Lawson*, and members of their class, from enforcing or executing any requisition delivered to them pursuant to C.P.L.R. § 7102, and from withholding possession or continuing to withhold possession from the person from whom it [the property] was seized pursuant to C.P.L.R. § 7102.

him by the plaintiff-creditor. Moreover, the person in whose possession the chattel is found may not necessarily be a defendant in the action. Therefore there is no requirement that a summons and complaint be served upon the person from whose possession the chattel is taken, or upon anyone else at the time of such taking. Without fixing a time therefor, the statute requires that the affidavit, requisition and undertaking be served upon the defendants named in the action, unless the court otherwise orders.

The affidavit to be delivered to the Sheriff, among other things, shall identify the chattel to be seized and state the value thereof. The undertaking is in a specified amount "not less than twice the value of the chattel stated in the plaintiff's affidavit," conditioned to secure the return of the chattel to any person to whom possession is awarded or the payment of a judgment against the person giving the undertaking.

The Sheriff retains possession of the seized chattel for a period of three days after which he delivers it to the plaintiff, unless in the meantime a person claiming the right to possession has reclaimed the chattel by filing with the Sheriff a notice of reclaimer, an undertaking in the same amount as the plaintiff's, and an affidavit similar to that required of the plaintiff. The Sheriff retains the chattel for three days after which he delivers it to the reclaimer. At any time the chattel is in the possession of the Sheriff, the chattel may be ordered impounded by the court on motion and cause shown.

C.P.L.R. § 7110 provides that the Sheriff shall forcibly enter a building or enclosure in order to search for and seize the chattel.

## FACTS

Briefly stated, the plaintiff Laprease alleges that the defendant Raymours Furniture Co., Inc., has delivered an affidavit, requisition, undertaking and summons and complaint to the defendant Engle, Marshal for the City of Syracuse, requiring him to seize a bed, box-spring and mattress, a highchair, a chest, an eleven piece dinette set, and other household furnishings.

On January 19, 1970, the defendant Engle, accompanied by two representatives of the defendant Raymours, attempted to seize the above-mentioned articles and advised the plaintiff that if she did not release them a forcible entry into her apartment would be made. A representative of the defendant Raymours agreed to hold the seizure in abeyance upon certain specified payments being made by the plaintiff Laprease. Mrs. Laprease, however, states that she is on welfare and unable to make the required payments. Consequently, she alleges that she is in "immediate danger" of having these articles which are "necessary and essential for the healthy and proper living arrangements for herself, her [ill] husband and her ten children * * * forcibly and illegally seized."

Mrs. Laprease also alleges that she has lived in the State of New York all her life, in the City of Syracuse for the past 16 years, and at her present address for the past 7 years; that she has no intention of removing the chattels pending the outcome of the replevin action on the merits, and that she believes that she has a meritorious defense to the action; that a pretrial seizure would irreparably injure her in that she does not have money to post a bond to reclaim the chattels and that she is financially unable to replace them. She further alleges that the threatened action of the defendants Engle and Raymour place her in immediate danger of being subjected to an illegal search and seizure and a consequent unlawful invasion of her privacy.

Clifford and Judith Lawson, plaintiffs in 70–CV–50, alleged that they reside with their children in the City of Albany; that their sole income consists of $77.00 a week derived from the employment of Clifford; that they have no assets other than the household furniture, including a stove and refrigerator, all of which was purchased "on time" from Henry S. Mantell Finer Furniture (Man-

tell) in October of 1968; that payments of $40.00 bi-weekly, in accordance with a purchase agreement, were made for six weeks, at which time Clifford became ill.

In March of 1969 a representative of Mantell's promised that they would not repossess the chattels if the plaintiffs would pay $20 every two weeks. It is alleged that these payments were made; nevertheless, a representative of Mantell's delivered an affidavit, requisition, and undertaking together with a summons and complaint, to the Sheriff of Albany County pursuant to Article 71. On or about February 16, 1970, the Sheriff seized the goods pursuant to Article 71. The plaintiffs allege that they were not able, financially, to acquire a surety or to post a bond in order to reclaim the goods. On February 18, 1970, Chief Judge Foley signed a temporary restraining order directing the return of the Lawson's chattels, and restraining further Article 71 action against them, pending the determination of the action.

Plaintiff Messler resides in the Village of Green Island, Albany County, New York, with her children and is a recipient of Aid for Dependent Children public assistance, and has no income other than that provided by public assistance. Therefore, she alleges that it is impossible for her to post a bond or obtain a surety in order to reclaim.

In September of 1968, Messler's husband bought on time from Mantell's certain kitchen furniture, a rug, three end-tables, lamps, a chair, and a record player. The husband stopped making payments on these goods in August of 1969. Thereupon, the plaintiff Messler entered into an oral agreement with Mantell's whereby she became the owner of the goods and would undertake the remaining payments on a deferred basis. However, a representative of Mantell's has informed her that they intend to repossess the goods and that if she doesn't surrender them voluntarily, then they will get a "court order."

The defendants, Marshals and Sheriffs, are the officers obliged under Article 71 to execute the requisition which "shall be deemed the mandate of the court," by seizing the chattels described in the affidavit; the other defendants are plaintiffs in the replevin actions, and also the Attorney General of the State of New York.

Other purchasers of household articles "on time", reciting circumstances similar to the named-plaintiffs in *Laprease*, withdrew their applications to intervene in that action upon the agreement of the vendors involved not to avail themselves of the prejudgment seizure provisions of Article 71.

## CONTENTIONS

The plaintiffs contend that Article 71 is unconstitutional, in that:

(1) It provides for a search and seizure and resultant invasion of privacy, without a warrant, in violation of the Fourth and Fourteenth Amendments;

(2) It violates the Due Process Clause of the Fourteenth Amendment by providing for the taking of property prior to notice and hearing, and

(3) It is violative of the Equal Protection Clause of the Fourteenth Amendment, since it allegedly is a law of general applicability which discriminates against those whose financial condition makes it impossible for them to file the undertaking required to repossess the chattels seized.

The defendants,[3] and principally the amici curiae counter that:

(1) Article 71 does not deprive persons of their property without due process of law, pointing to the safeguards contained in the Article itself and to the

---

3. Except for the defendant Engle, who has submitted an amended answer which agrees with the claims of constitutional deprivation advanced by the plaintiffs in 70–CV–16 (*Laprease*).

approval which tradition and time have given to the replevin device;[4]

(2) Article 71 does not deprive litigants of the equal protection of the laws —it is contended that the inability of litigants to afford themselves of the Article's safeguards because of their poverty does not of itself render the Article unconstitutional on equal protection grounds. The State is not constitutionally responsible for the economic inequality of the parties in civil matters, and

(3) § 7110 of Article 71 does not offend the Fourth Amendment because (a) these are civil not criminal proceedings and the Amendment is not applicable, and (b) even if it is established that a search and seizure take place under Article 71, the same are not unreasonable.

## JURISDICTION

Jurisdiction is alleged to be based upon 28 U.S.C. §§ 1343(3), 1343(4), 2201, 2202, 2281, 2284, and 42 U.S.C. § 1983. None of the parties have seriously questioned the court's jurisdiction.

Upon the oral argument, the court *sua sponte,* raised the question of whether Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) was controlling and defeated jurisdiction because the actions might deal solely with property rights. Having considered the question, we hold *Eisen,* supra, inapposite.

The Fourth Amendment question that is present in these cases is clearly a "right or immunity [involving] personal liberty, not dependent for its existence upon the infringement of property rights." Eisen v. Eastman, 421 F.2d at 564, quoting from Hague v. C.I.O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). In regard to the "personal liberty" aspect, see Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ Further, "the instant actions allege deprivation of procedural due process, a civil right, which may ultimately lead to the loss of a property right," and jurisdiction would also appear proper on the due process contentions. Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. Apr. 29, 1970). In any event, since this court has jurisdiction over the Fourth Amendment claims, pendent jurisdiction over the due process and equal protection claims exists.

## FOURTH AMENDMENT CLAIMS

If the restraints of the Fourth Amendment are held to apply to an action under Article 71, it would not require the citation of any authority to demonstrate that a search or seizure made pursuant to and in reliance upon the provisions of that Article, would violate that Amendment's constitutional protections.

The commands of § 7110 that "[i]f a chattel is secured or concealed in a building or enclosure and is not delivered pursuant to his demand, the sheriff shall cause the building or enclosure to be broken open and shall take the chattel into his possession," and § 7102 that he "shall seize a chattel without delay when the plaintiff delivers to him an affidavit, requisition and undertaking,"—all without a warrant and without the intervention of a judicial officer—hardly comport with the Fourth Amendment's guarantee that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."

■ A search and seizure without a warrant can be made only in exceptional circumstances, and the search of a private dwelling without a warrant is presumptively "unreasonable." See e. g. James v. Goldberg, 303 F.Supp. 935, 940 (S.D.N.Y.1969) (three-judge court) probable jurisdiction noted sub nom. Wyman v. James, 397 U.S. 904, 90 S.Ct.

---

4. It is claimed that Article 71 is a descendant of the ancient remedy of replevin originating from the English Statute of Marlbridge, 52 Henry III, ch. 21, which was incorporated into the laws of New York in the codification of 1788.

921, 25 L.Ed.2d 85 (1970), and the cases cited therein.

The argument that the Fourth Amendment does not apply, is supported by neither good sense nor law. If the Sheriff cannot invade the privacy of a home without a warrant when the state interest is to prevent crime, he should not be able to do so to retrieve a stove or refrigerator about which the right to possession is disputed. Nor should he have any greater right to make a seizure of these or similar chattels not within a building or enclosure by virtue of a requisition *"deemed* to be the mandate of the court," [5] (emphasis added), but which in fact is the mandate of the plaintiff's attorney issued without the examination or approval of an intervening magistrate, and resulting in a taking against the will of the owner.[6] "It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930 (1967).

■ The Fourth Amendment does not exist simply as a shield to prevent intrusions in criminal matters, but is a basic protection available to all, in matters both civil and criminal. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See

v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); James v. Goldberg, supra. Further, if the possessor should resist or hinder a search and seizure provided for under § 7102 or § 7110, then he could be subject to criminal prosecution pursuant to N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 195.05.[7]

■ Accordingly, it is abundantly clear that § 7102 and § 7110 fail to conform to the strictures of the Fourth Amendment, made applicable by the Fourteenth Amendment, and are unconstitutional on their face.

## DUE PROCESS

Insofar as Article 71 permits a prehearing seizure, possibly without notice to the defendant,[8] it violates due process, in addition to constituting an illegal search and seizure. See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Beds, stoves, mattresses, dishes, tables and other necessaries for ordinary day-to-day living are, like wages in *Sniadach,* a "specialized type of property presenting distinct problems in our economic system," the taking of which on the unilateral command of an adverse party "may impose tremendous hardships" on purchasers of these essentials. That it is

---

5. § 7102 (d) C.P.L.R.

6. If the owner wanted to voluntarily surrender it, or, if it could be taken peaceably by "self-help," there would be no need to resort to an Article 71 action. In relation to "self-help", see the testimony of Ralph Stone, Chief of Law Consumer Unit, Legal Aid Society of St. Louis, Missouri, before the National Commission on Consumer Finance on June 22, 1970.

7. *195.05. Obstructing governmental administration*
    A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from

performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.

8. See 34 Albany L.Rev. 426 (1970) in which it is pointed out that the alleged creditor does not have to commence an action before serving the papers on the Sheriff. If an action has not been commenced he must also serve a summons and complaint on the Sheriff; however, as indicated above, the Sheriff is only required to serve on the debtor the plaintiff's affidavit, requisition, and undertaking. Therefore, the debtor may not even know of the institution of the action until some time after the chattels are delivered to, and possibly disposed of by the plaintiff.

a temporary taking, does not obviate the objection that it is a taking prior to hearing and notice.

Bypassing the question of equal protection, and recognizing that the defendant can get possession pending trial by posting bond, he still will be deprived of the use and enjoyment of his property for a theoretical minimum of 4 days, and much more likely for a still longer period.

Lack of refrigeration, cooking facilities and beds create hardships, it would seem, equally as severe as the temporary withholding of ½ of Sniadach's pay, and measured by *Sniadach,* the hardships imposed cannot be considered *de minimus.*

The factual difference that *Sniadach* dealt with an unsecured interest and in these cases the vendors' interests were secured, dissolves before the purchasers' claims that there were no defaults and no right to repossession. In fact, the plaintiff Messler in action 70–CV–50 alleges that the vendor held *no* secured interest in the property which he threatened to repossess, and the amici briefs further point out that the replevin remedy is not limited to secured transactions.

The statute, giving the right to repossess without a hearing, is not "narrowly drawn" to meet special situations and circumstances but covers any replevin situation.

The statute's defenders find it insulated from attack by its age, an attribute that did not prevent the Court from "abandoning the legal customs and practices in this country with reference to attachments and garnishments". Sniadach, supra, 395 U.S. at 350, 89 S.Ct. at 1827, Black, J., dissenting. Also, the

"blessing of age" wears out. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (U.S. June 15, 1970).

Goldberg v. Kelly, supra, further bolsters the claim of lack of due process. No one claims, or could claim, that due process does not require a full evidentiary hearing with all the usual rights of an adversary proceeding before final judgment in a replevin suit. To permit the pretrial status quo [9] to be reversed without a hearing or even an ex-parte application to a court or judge, "the governmental interest in [such reversal]" should outweigh the replevin defendant's "interest in avoiding [the] loss" [10] resulting from the temporary loss of use and enjoyment of property to which he is entitled. The plaintiff in such a case has established no entitlement, except such as he has unilaterally declared unto himself.

That the defendant may be able to reclaim the property by posting a bond, the amount of which has been fixed by his adversary, does not change the fact, as has been previously pointed out that he has already been deprived of his property possibly without notice and "an opportunity to be heard." Neither have facts indicating special circumstances been presented to a judicial officer to justify a concept of due process that would allow the elimination of the right to be heard.

While it is not hard to find that the interests of the secured creditor or the out-of-possession claimant might be promoted by the above-proceedings,[11] the governmental interest supposedly advanced is much more elusive. The gov-

9. At that juncture, there is nothing but the plaintiff's unexamined allegation that he is entitled to possession, to dispute the defendant's presumptively lawful, actual or constructive possession.

10. Goldberg v. Kelly, supra, 397 U.S. at 263, 90 S.Ct. at 1018.

11. The ability to make good the threat to repossess under Article 71, coupled with the inability of the consumer to post security for the return of the goods,

often results in the abandonment by the impecunious purchaser of defenses he may have to a replevin action, and instead, agreement to terms imposed by the seller. See the hearings held before the National Commission on Consumer Finance, especially the statements of Ralph Stone and David Caplovitz on June 22, 1970, and of Benny L. Kass and Mary Gardiner Jones on June 23, 1970.

724

ernmental interest should encompass the welfare of the alleged debtors and consumers, as well as creditors.[12]

Brunswick Corp. v. J. & P., Inc., 424 F.2d 100 (10th Cir. 1970) cited by the amici in support of their due process contentions is distinguishable. *Brunswick,* decided on the basis of Oklahoma law, held that the doctrine of conversion *custodia legis* did not apply to a conditional vendor because of the reservation of title by him. With little discussion the court found the situations in *Sniadach* and *Brunswick* "not in the least comparable" because *Sniadach* involved "a specialized type of property."[13]

Implicit in the *Brunswick* holding is a finding of consent to the seizure and waiver of the constitutional rights by reason of the admission by the defendants in the replevin action that they were in default under the conditional sale contract. The lack of such admissions in the instant cases distinguishes *Brunswick* factually.

Further, we question that the fine print in the usual consumers conditional sales contract gives rise to a competent and intelligent waiver of a constitutional right.

In any event the New York Statute is not narrowly drawn to fit *Brunswick.*

Defendants and amici also rely on Supreme Court cases distinguished by the majority in *Sniadach:* e. g., Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L. Ed. 837 (1921); Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929). However, we do not regard these cases as controlling. *Ownbey* dealt with attachment of property of a non-resident debtor, a special situation not presented here. *Coffin Bros.* dealt with attachment of assets of shareholders after a bank failure, thus raising issues of pro-

tecting the public not involved here. *McKay* was a per curiam affirmance without discussion based solely on the authority of *Ownbey* and *Coffin Bros.* and sustained a Maine creditor attachment. It was cited in *Sniadach* for the proposition: "A procedural rule that may satisfy due process for attachments in general, see McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975, does not necessarily satisfy procedural due process in every case." *Sniadach,* supra, 395 U.S. at 340, 89 S.Ct. at 1822. We think that this is such a case, and do not regard *McKay,* whatever its authority may be after *Sniadach,* as suggesting a contrary conclusion.

■ Procedural due process requires that notice and an opportunity to be heard be provided the alleged debtor *before* his property is seized pursuant to Article 71, or at least that the creditor present to a judicial officer the circumstances allegedly justifying summary action. Article 71's failure to so provide renders it unconstitutional as violative of procedural due process.

## UNEQUAL PROTECTION

The plaintiffs claim that Article 71, by requiring all defendants (impecunious included) in replevin actions to post a bond to reacquire property seized by the plaintiff, runs afoul of the Equal Protection Clause of the Fourteenth Amendment. This contention takes us into a murky and uncertain area. Compare, e. g., Douglas v. California, 372 U.S. 353, 361, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (dissent of Harlan, J.) with Williams v. Shaffer, 385 U.S. 1037, 87 S.Ct. 772, 17 L.Ed.2d 683 (1967) (dissent of Douglas, J.).

Since we have found the questioned provisions of Article 71 violative of other constitutional safeguards, it is neither necessary nor advisable for us to

12. See, e. g., the cases cited in *Goldberg,* supra, 397 U.S. at 263 n. 10, 90 S.Ct. 1011, 25 L.Ed.2d 287, and the hearings held before the National Commission on Consumer Finance on June 22 and 23, 1970, describing the abuses attendant on replevin statutes.

13. See pp. 719–720 supra for discussion of nature of seized chattels in the instant cases.

tread in this area which may be the subject of further examination in the near future by the United States Supreme Court.[14]

## SUMMARY

In conclusion, we hold that the provisions of Article 71 permitting the prejudgment seizure of chattels by the plaintiff in a replevin action without an order of a judge or of a court of competent jurisdiction, are unconstitutional in that they violate the search and seizure provisions of the Fourth Amendment, made applicable to the states under the Fourteenth Amendment, and the provisions further violate the procedural due process requirements of the Fourteenth Amendment.

In so declaring, we do not hold or intend to intimate that nothing less than a full adversary evidentiary hearing prior to seizure, will comport with the requirements of procedural due process.

Neither do we interfere with the remedy of the traditional replevin action recognized by Article 71, except as herein specifically provided. What is clear, however, is that the statutory scheme employed by New York, which permits prejudgment seizure without even an *ex parte* order of a judge or court upon a showing of justification therefor, does not comport with procedural due process or the 4th and 14th Amendments.

The foregoing opinion constitutes the Findings of Fact and Conclusions of Law pursuant to F.R.Civ.P., Rule 52.

For the reasons herein, it is

Ordered that judgment be granted herein:

(1) declaring those provisions of Article 71 permitting a prejudgment seizure of property without an order of a court or judge of competent jurisdiction unconstitutional on their face, void and unenforceable, and

(2) enjoining and restraining the defendants from implementing or enforcing in any manner said provisions of Article 71.

Settle judgment on notice in accordance with F.R.Civ.P., Rule 65(d).

## APPENDIX
### ARTICLE 71—RECOVERY OF CHATTEL

7101. When action may be brought.

7102. Seizure of chattel on behalf of plaintiff.
    (a) Seizure of chattel.
    (b) Service.
    (c) Affidavit.
    (d) Requisition.
    (e) Undertaking.
    (f) Disposition of chattel by sheriff.

7103. Reclaiming and impounding chattel.
    (a) Reclaiming chattel.
    (b) Impounding chattel.
    (c) Additional parties.

7104. Seizing or reclaiming less than *all chattels*.

7105. Sale of perishable property.

7106. Payment of sheriff's fees and expenses; liability of sheriff.
    (a) Payment of sheriff's fees and expenses.
    (b) Liability of sheriff.

7107. Sheriff's return.

7108. Judgment; execution in certain cases; enforcement by contempt.
    (a) Generally.
    (b) Where value of chattel should not be awarded; execution.
    (c) Failure of jury to fix sum.

7109. Unique chattel.
    (a) Injunction, temporary restraining order.
    (b) Judgment enforceable by contempt.

7110. Sheriff's powers to enter building on seizure or execution.

7111. Action on undertaking.

---

14. See, Sanks v. Georgia, 399 U.S. 922, 90 S.Ct. 2229, 26 L.Ed.2d 788 restored to the calendar for reargument.

## § 7101. *When action may be brought*

An action under this article may be brought to try the right to possession of a chattel.

## § 7102. *Seizure of chattel on behalf of plaintiff*

*(a) Seizure of chattel.* The sheriff shall seize a chattel without delay when the plaintiff delivers to him an affidavit, requisition and undertaking and, if an action to recover the chattel has not been commenced, a summons and complaint.

*(b) Service.* The sheriff shall serve upon the person from whose possession the chattel is seized a copy of the affidavit, requisition and undertaking delivered to him by the plaintiff. Unless the court orders otherwise, the papers delivered to him by the plaintiff, shall be personally served by the sheriff on each defendant not in default in the same manner as a summons or as provided in section 314; if a defendant has appeared he shall be served in the manner provided for service of papers generally.

*(c) Affidavit.* The affidavit shall clearly identify the chattel to be seized and shall state:

1. that the plaintiff is entitled to possession by virtue of facts set forth;

2. that the chattel is wrongfully held by the defendant named;

3. whether an action to recover the chattel has been commenced, the defendants served, whether they are in default, and, if they have appeared, where papers may be served upon them; and

4. the value of each chattel or class of chattels claimed, or the aggregate value of all chattels claimed.

*(d) Requisition.* The requisition shall be deemed the mandate of the court and shall direct the sheriff of any county where the chattel is found to seize the chattel described in the affidavit.

*(e) Undertaking.* The undertaking shall be executed by sufficient surety, acceptable to the sheriff. The condition of the undertaking shall be that the surety is bound in a specified amount, not less than twice the value of the chattel stated in the plaintiff's affidavit, for the return of the chattel to any person to whom possession is awarded by the judgment, and for payment of any sum awarded by the judgment against the person giving the undertaking. A person claiming only a lien on the chattel may except to the plaintiff's surety.

*(f) Disposition of chattel by sheriff.* Unless the court orders otherwise, the sheriff shall retain custody of a chattel for a period of three days after seizure. At the expiration of such period, the sheriff shall deliver the chattel to the plaintiff if there has not been served upon him either a notice of exception to plaintiff's surety, a notice of motion for an impounding order, or the necessary papers to reclaim the chattel. Upon failure of the surety on plaintiff's undertaking to justify, the sheriff shall deliver possession of the chattel to the person from whom it was seized.

## § 7103. *Reclaiming and impounding chattel*

(a) *Reclaiming chattel.* A chattel may be reclaimed by any person claiming the right to its possession, except a defendant claiming only a lien thereon, by service upon the sheriff, and upon all parties to the action, of a notice that the reclaiming party requires a return of all or part of the chattels replevied; an undertaking executed as required by subdivision (c) of section 7102 and an affidavit stating that the reclaiming party is entitled to possession by virtue of facts set forth. The sheriff shall retain custody of the chattel for three days after such papers have been served upon him. At the expiration of such period he shall deliver the chattel to the person serving the notice if there has not been served upon him a notice of exception to sureties or a notice of motion for an impounding order. Upon failure by the surety to justify, the sheriff shall deliver possession of the chattel to the plaintiff. If more than one person serves a reclaiming notice on the

sheriff, the sheriff shall move, on notice to all parties, to have the court determine to whom the chattel shall be delivered.

(b) *Impounding chattel.* A chattel which is in the custody of the sheriff may be impounded pending judgment or further order of the court, upon motion of any person claiming the right to its possession, upon notice to the sheriff and to all parties to the action. The motion shall be granted if the chattel is of such a nature, or the circumstances are such, that the moving party, if found to be entitled to possession, would not be adequately compensated for its loss by the payment of its pecuniary value. An undertaking shall accompany the motion, in an amount not less than two hundred and fifty dollars, that the moving party will indemnify the sheriff for all expenses incurred by him in transporting, handling and safekeeping the chattel pending determination of the motion, and, if the motion is granted, pending judgment or further order of the court. All expenses resulting from impounding shall be taxed as disbursements in the action as the court may direct.

(c) *Additional parties.* A motion under this section, or service upon plaintiff of a notice of reclamation or exception to surety by a person not a party to the action, makes such a person a party to the action. Plaintiff shall serve a copy of the complaint upon such person within twenty days after he becomes a party.

### § 7104. Seizing or reclaiming less than all chattels

Where the seizure of two or more chattels is required by the plaintiff, the sheriff shall seize those chattels which can be found. Less than all of the seized chattels may be impounded or reclaimed. The value of the chattels seized, as stated in the affidavit of the plaintiff, shall be the value for the purposes of subsequent undertakings in the action. The plaintiff may, at any time before entry of judgment, require seizure of those chattels not yet seized, by delivering to the sheriff an affidavit, requisition and undertaking; the proceedings are the same as on a former seizure.

### § 7105. Sale of perishable property

Upon motion with such notice as the court may require, the court may order the sheriff to sell perishable property which has been seized. The court shall prescribe the time and place of the sale, and the manner and time in which notice thereof shall be given. Unless the court orders otherwise, the sheriff, after deducting his fees and necessary expenses, shall pay the proceeds into court to be held pending determination of the action.

### § 7106. Payment of sheriff's fees and expenses; liability of sheriff

(a) *Payment of sheriff's fees and expenses.* The sheriff shall not deliver a chattel to the person entitled to possession unless such person shall, upon request, pay to the sheriff his lawful fees and the expenses necessarily incurred in taking and keeping the chattel. Such fees and expenses shall be taxed as costs in the action or may be taxed immediately upon motion and the sheriff may be required to refund any amount not found to be necessarily incurred.

(b) *Liability of sheriff.* A sheriff is liable for damages caused by his delivery of a chattel in violation of this article only to the extent that such damages can not be collected from the party to whom the chattel was delivered, or his surety. When a chattel is delivered by the sheriff to any party, as prescribed in this article, the sheriff ceases to be responsible for the sufficiency of the sureties of any party; until then, he is responsible for the sufficiency of the sureties of any party.

### § 7107. Sheriff's return

The sheriff shall file with the clerk a return within twenty days after he has delivered a chattel; it shall include all papers delivered to or served on him and a statement of all action taken by him. Where the sheriff has not filed a return before the hearing of a motion made by any party to punish him for

contempt for such failure, he may be punished for contempt. At least ten days' notice of such motion shall be given to the sheriff.

### § 7108. Judgment; execution in certain cases; enforcement by contempt

(a) *Generally.* Damages for wrongful taking or detention or for injury to or depreciation of a chattel may be awarded to a party. Except as provided in subdivision (b), judgment shall award possession of each chattel to the prevailing party or, if the action is discontinued or dismissed, to the person from whom it was seized, and where the person awarded possession is not in possession when judgment is entered, it shall in the alternative, award the value of each chattel at the time of trial or the sum for which it was sold under section 7105, decreased by the value of the interest of an unsuccessful party.

(b) *Where value of chattel should not be awarded; execution.* A verdict, report or decision in favor of the defendant where the chattel is in possession of the plaintiff at the time it is rendered shall not fix the value of the chattel where:

1. the plaintiff is the owner of the chattel but it was rightfully distrained doing damage, and the value of the chattel is greater than the damages sustained by the defendant; or

2. the plaintiff is the owner of the chattel, but the defendant had a special property therein, the value of which is less than the value of the chattel.

The verdict, report or decision shall state why the value of the chattel is not fixed, and the final judgment shall award to the defendant the amount of damages or value of his special property and, if such sum is not collected, possession of the chattel. An execution shall direct the sheriff to deliver possession of the chattel to the defendant unless the party in possession pays the sum awarded to the defendant with interest and sheriff's fees and in case the chattel cannot be found within his county, then to satisfy that sum from the property of the party against whom the judgment is entered. If the chattel is in possession of the defendant, it may remain in his possession until the amount awarded is paid.

(c) *Failure of jury to fix sum.* If the jury shall fail to fix any sum required to be fixed by this section, such sum shall be fixed by a jury empanelled for the purpose upon motion made before the judge who presided at the trial within fifteen days after verdict.

### § 7109. Unique chattel

(a) *Injunction, temporary restraining order.* Where the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court.

(b) *Judgment enforceable by contempt.* Where the chattel is unique, the court, in addition to granting a judgment under section 7108, may direct that a party in possession deliver the chattel to the party entitled to possession. Disobedience of a judgment or order so directing may be punished as a contempt of court. If a party accepts the value of the chattel awarded to him by the judgment, he shall have no claim to the chattel.

### § 7110. Sheriff's powers to enter building on seizure or execution

If a chattel is secured or concealed in a building or enclosure and it is not delivered pursuant to his demand, the sheriff shall cause the building or enclosure to be broken open and shall take the chattel into his possession.

### § 7111. Action on undertaking

An action on an undertaking cannot be maintained after final judgment until the return, wholly or partly unsatisfied, of an execution on the judgment for delivery of possession of the chattel or for payment of a sum of money in lieu of the chattel.

§ *7112.  Testimony  by  deposition  to ascertain  location  of  chattel*

A party to an action to recover a chattel may move without notice, upon a showing that he lacks knowledge of the location of the chattel or a part thereof, for an order to examine any person for the purpose of obtaining information with reference to such location.  The order may be granted before or after service of summons and complaint, or anytime before or after final judgment, and may also restrain the adverse party from acting in violation of whatever rights the moving party may have in the chattel, upon the execution of a reasonable undertaking, with sufficient sureties, to reimburse the adverse party for all damages wrongfully caused by such restraint.

Added L. 1968, c. 355, eff. Sept. 1, 1968.