Frank J. Pino, J.
This is an action involving a lien of warehouseman (Uniform Commercial Code, § 7-209) iand enforcement of warehouseman’s lien (Uniform Commercial Code, § 7-210) of the New York Uniform Commercial Code. The code provides that “ A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt * * * for charges for storage or transportation * * * and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law ” (Uniform Commercial Code, § 7-209, subd. [1]). The code further provides for the enforcement of the lien by public sale of the goods. Prior thereto “ all persons known to claim an interest in the goods must be notified * * * in person or sent by registered or certified letter to the last known address ” (Uniform Commercial Code, § 7-210, subd. [2], pars, [a], [b]). The requirements for sale as to the contents of the notice are set forth, as is the required advertisement of sale, and its contents, and the procedure to be followed if the demand for payment is not met within the time specified in the notification. “ Before any sale pursuant to this section any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this Article ” (Uniform Commercial Code, § 7-210, subd. [3]).
At the outset, as the court reads the statutory language, it commands no notice of anything whatsoever before the lien will attach; that the only notice required is that unless the claim is paid the goods will be advertised for sale; that the advertisement of sale requires only a description of the goods, the name of the lienee and the time and place of sale; and that the sale can be avoided by payment of the amount necessary to satisfy the lien and reasonable expenses of the sale. The discussion following is also based on the court’s conclusion that under the statute the existence of a lien and consequent detention, as well *764 as the amount of the lien and reasonable expenses, may all be created and fixed by the warehouseman, unilaterally, without affording the lienee an opportunity to be heard as to any of these matters, and without any judicial control.
Plaintiff, whose property is being detained and the sale of which is threatened (although not at the present time), brings this action for replevin and for a declaratory judgment, urging that the foregoing provisions of the Uniform Commercial Code are violative of her constitutional rights. Plaintiff now moves for partial summary judgment and defendants cross-move for an order dismissing the pleading for failure to state a cause of action.
I.
Plaintiff alleges that, while she was without the State of New York for 11 days, she was evicted from her apartment in Brooklyn. Upon her return on June 4, 1973 she found that all of her furniture and household possessions had been removed by the defendants and taken to their warehouse for storage on or about June 1, 1973. At the time of the removal, plaintiff’s daughter, then 18, was in the apartment. A Marshal and agents of defendants came to the apartment to move plaintiff’s possessions. Plaintiff alleges, upon information and belief, that her daughter signed a Department of Sanitation Movers’ Inventory Record completed by defendants’ agents, at their request; was told the possessions were to be placed in defendants’ storage house; was not told of the charges for storage or the cost, nor was she informed as to possible alternatives. Plaintiff also alleges that even if her daughter gave an informed and knowing consent to storage with defendants, which plaintiff maintains she did not, that plaintiff never authorized her daughter to act as her agent and that plaintiff, herself, has not agreed to the storage with defendant Banner. Defendant Frichano’s affidavit alleges that the daughter was in possession, clothed with authority to authorize his agents to take plaintiff’s goods into private storage and her apparent authority being asserted, defendants’ agents had her sign an inventory and warehouse receipt and took the goods into storage at her request.
Plaintiff further alleges that she had been abandoned by her husband more than four years ago and since that time has been forced to rely on an allotment from the Department of Social Services to provide for herself and her daughter. Upon learning of the removal of her possessions, plaintiff contacted the department which, in turn, contacted defendant Banner. Its *765 efforts to negotiate for the return of plaintiff’s possessions were unsuccessful and it referred her to the Legal Aid Society. On June 20,1973 plaintiff’s daughter received a bill from defendant Banner for $697.05 for handling and storing plaintiff’s property. On August 2, 1973 a representative of the society was advised by the defendant Banner that the property would not be released until all charges had been paid and that the property would be held for payment until August 31, 1973 after which her possessions would be sold at public sale.
The present suit was then instituted and an order to show cause for a preliminary injunction and a temporary restraining order were obtained. By stipulation, the personal property detained by defendants is being held and preserved without selling, offering to sell or otherwise disposing of such property, and there was delivered by defendants certain property which plaintiff claims would be exempt from execution under CPLB 5205. A very substantial portion of plaintiff’s household possessions and furniture is still in the possession of the defendants and is being detained by them pursuant to section 7-209 of the Uniform Commercial Code, the section presently under consideration.
The complaint demands, inter alia, the following relief: (a) a judgment for possession of plaintiff’s chattels; (b) a judgment declaring sections 7-209 and 7-210 of the New York Uniform Commercial Code unconstitutional as violative of the requirements of due process, both on their face and as applied to the plaintiff under the Constitution of the United States and the Constitution of the State of New York; (c) monetary damages as compensation for the unwarranted detention of plaintiff’s property and for emotional and mental distress suffered as a result.
The answer asserts a general denial and a counterclaim for charges.
Plaintiff now moves for an order pursuant to CPLR 3212 striking part of defendants’ answer and directing partial summary judgment in favor of plaintiff and against defendants, declaring sections 7-209 and 7-210 of the New York Uniform Commercial Code to be violative of the due process clause of the Fourteenth Amendment to the United States Constitution and of section 6 of article I of the New York State Constitution on their face and as applied to an individual whose property is detained and threatened to be sold thereunder without a prior due process hearing, and permanently enjoining the operation, execution and enforcement of said statutes.
*766 Defendants cross-move for an order pursuant to CPLR 3211 (subd. [a], par. 7) dismissing the pleading on the ground that it fails to state a cause of action.
The Attorney-General of the State of New York appears pursuant to section 71 of the Executive Law and has submitted an affidavit in opposition to the motion for partial summary judgment. Section 71 applies when the constitutionality of a statute is in question and authorizes the appearance of the Attorney-General in cases involving the unconstitutionality of an act of the Legislature.
II.
Before proceeding to rule upon the pending motions it is necessary to know the dimensions of the court’s authority within the context of the facts presented.
Several reasons are urged why the court may not, or at least should not, consider the constitutional question posed. It is contended that “ if the plaintiff is concerned that the issue of constitutionality will escape determination * # * let us put
her mind at rest.” Reference is made for this surcease to the fact that “ there is currently pending a similar action in the Southern District Federal Courts, Brooks v. Flagg Brothers Moving Co., 73 Civ. 4050.”
In discussing the power of constitutional review in both Federal and State courts, it has been said, it is not permissible to escape the duty merely because State courts also have the responsibility, equally with Federal courts, “ to guard, enforce and protect every right granted or secured by the Constitution of -the United States ” (Robb v. Connolly, 111 U. S. 624, 637). It is equally not permissible for State courts to escape their duty merely because Federal courts also have the responsibility. They have such authority and duty, concurrently with Federal courts, by virtue of the due process requirements of section 6 of article I of the New York State Constitution as a court of general jurisdiction (Judiciary Law, § 140-b).
In Thrasher v. United States Liab. Ins. Co. (19 N Y 2d 159), the Court of Appeals said (p. 166): “ The Supreme Court is a court of general jurisdiction, and it is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed (N. Y. Const., art. VI).” The court further noted in connection with the claim of unconstitutionality there is no doubt that State courts of general jurisdiction may entertain such claims.
The Supreme Court of New York State is one of general original jurisdiction in law and equity. Under section 7 of *767 article VI of the New York State Constitution, its powers extend to actions declaring the legal rights and relationships between parties, including those set forth in CPLR 3001; and unless it clearly appears to the contrary it has jurisdiction of actions brought before it (Condon v. Associated Hosp. Serv. of N. Y., 287 N. Y. 411).
It is thus clear that this court possesses the power of constitutional review concurrently with the Federal courts. Accordingly, we find no merit in defendants’ position that this court should not decide the constitutional issue before it because a possibly similar action is currently pending in the Southern District of New York.
III.
Aside from the foregoing contention as to the court’s power or authority to determine a constitutional question, if sufficiently posed, it is urged that the court nevertheless refrain from facing such a question and that the court find alternative, nonconstitutional grounds to dispose of the litigation. Defendants suggest that the case presented is hypothetical, since they have never taken any steps to sell the property and there is a complete lack of a threatened sale. However, the detention of plaintiff’s property, coupled with the oral notice and statements of defendants; followed by a written sale notice stating the existence of a lien; followed by a written final notice, is a “ threat to plaintiff’s possessory interest in her property and property rights ” (Fuentes v. Shevin, 407 U. S. 67), that is, “ the interest in continued possession and use of the goods ” (Sniadach v. Family Finance Corp., 395 U. S. 337) sufficient to justify the claim of plaintiff that her constitutional right to notice and an opportunity to be heard were denied (Coe v. Armour Fertilizer Works, 237 U. S. 413).
Defendants further assert that alternative nonconstitutional grounds do exist for the resolution of the questions presented, since plaintiff, by claiming that she never authorized her daughter to act as her agent, raises a question as to the existence of any lien, or whether the transaction created a relation of warehouseman; and thus, if plaintiff’s property may not have been subjected to any lien, there is no necessity to determine the constitutionality of the law creating the lien.
In discussing warehousemen’s liens in New York, it was held, as far back as 1896, that11 the common-law lien given warehouse-men * * * is now governed by statute * * * which gives a lien to a warehouseman, or a person lawfully engaged *768 exclusively in the business of storing goods, wares and merchandise for hire ” (Merritt v. Peirano, 10 App. Div. 563, 565, affd. 167 N. Y. 541).
This statutory lien is now embodied in section. 7-209 of the Uniform Commercial Code. Subdivision (3) of section 7-209 of the Uniform Commercial Code states: “ A warehouseman’s lien for charges and expenses * * * is also effective against any person who so entrusted the bailor with possession of the goods that a pledge of them by him to a good faith purchaser for value would have been valid but is not effective against a person as to whom the document confers no right in the goods covered by it under section 7-503.”
The lien of a warehouseman is not good unless the depositor had power to create a valid pledge and is not effective as to persons against whom the document confers no rights in the goods. As to third persons, the owner must have entrusted the goods to one with actual or apparent authority. Thus, the owner’s interest will not be subjected to a lien arising out of a deposit of his goqds by a thief. On the other hand, the warehouseman may be protected because of the actual, implied or apparent authority of the depositor (Official Comment, McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 7-209, pp. 48, 49).
The questions of fact as to the authority to create a bailment and the validity of the alleged lien are material only to plaintiff’s cause of action for replevin. However, plaintiff here does not move for summary judgment in the replevin action. Had she done :so, the questions of fact presented would necessarily defeat such a motion. Plaintiff does move for summary judgment on her cause of action for a declaratory judgment. The questions of fact are immaterial to the issue of law raised on that motion, namely, are the detention and sale provisions of the Uniform Commercial Code constitutional?
IV.
Plaintiff presents this issue by seeking declaratory and injunctive relief pursuant to CPLR 3001, which provides : “ The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.”
Obviously, under the statute there is no bar to plaintiff’s bringing, in the one proceeding, an action for replevin and for *769 a declaratory judgment. CPLR 3001 allows a declaratory demand “ whether or not further relief is or could be claimed ” and CPLR 3017 (subd. [b]) even requires the demand [the “ Wherefore ” clause] to “ specify * * * further or consequential relief * * * claimed”. The sole statutory limitation is that a justiciable controversy exists.
Declaratory judgments have a broad range of permitted uses. One of them is to declare upon the validity of a contested statute, ordinance, rule, regulation, etc. A person with a genuine interest in the particular provision or its scope may seek the declaration.
The words “ justiciable controversy ” were included in CPLR 3001 to codify holdings of the Court of Appeals to the effect that there is a constitutional requirement of an actual controversy between adverse parties and that the courts are not empowered to render advisory opinions or determine abstract, moot or academic questions (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.03). None are here.
In the instant case plaintiff has posed a justiciable controversy with respect to her rights that is present, real, definite and substantial and ripe for judicial determination (Prashker v. United States Guar. Co., 1 N Y 2d 584; Park Ave. Clinical Hosp. v. Kramer, 26 A D 2d 613, affd. 19 N Y 2d 958; see CPLR 3001). Defendants threaten to pursue a course of conduct that would be detrimental to plaintiff, and she may seek a declaration that their threatened conduct will infringe upon her legally protected rights (De Veau v. Braisted, 5 A D 2d 603, affd. 5 N Y 2d 236, affd. 363 U. S. 144; Dun & Bradstreet v. City of New York, 276 N. Y. 198; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.06g).
Included in this area of discussion the court has considered a case cited in the briefs, and which this court feels is applicable. Blye v. Globe-Wernicke Realty Co. (33 N Y 2d 15) was an action brought for declaratory judgment of the unconstitutionality of section 181 of the Lien Law, following a summary seizure by defendant of plaintiff’s personal property for nonpayment of hotel charges. The property in question had been returned after filing of the complaint. In concluding that the New York innkeepers’ law, section 181 of the Lien Law, is (p. 19) “ irreconcilable with the evolving concepts of due process and is unconstitutional, ’ ’ the Court of Appeals covered several points raised by the Attorney-General, there as here. They are (p. 19): (1) “ The due process * * * issues, are, * * * 1 live ’ and the controversy justiciable ” [citing cases]. This statement was based on the court’s determination that despite the fact *770 that the return of the property rendered the claim for injunctive j relief academic, the claim for money damages remains and j “ adjudication of that claim turns on the resolution of the con- j stituitional questions. The due process * * * issues are, i therefore ‘ live ’ and the controversy justiciable. ’ ’ Such a claim for money damages is here presented. (2) “ Moreover, it is . well-settled that judicial reluctance, to decide questions which j need not be reached should yield when, as here, important con- j sititutional issues are raised and the controversy is of a kind likely to recur” [citing cases]. Certainly, the likelihood of recurrence exists in the case at bar.
Concluding that this court has the jurisdiction, authority and responsibility to do so, we turn now (to the consideration of the constitutional question posed. This issue must be resolved in light of the concepts of due process which have evolved through a series of recent cases decided by Federal courts and the United States Supreme Court (Sniadach v. Family Finance Corp., 395 U. S. 337; Goldberg v. Kelly, 397 U. S. 254; Laprease v. Raymours Furniture Co., 315 F. Supp. 716; Fuentes v. Shevin, 407 U. S. 67; Mitchell v. Grant Co., 416 U. S. 600).
Sniadach, decided in 1969, involved the review of a Wisconsin statute providing for prejudgment garnishment without notice and an opportunity to be heard before seizure of wages, and it was held that absent notice and a prior hearing the pre judgment procedure violated the fundamental principle of due process. Goldberg, decided in 1970, held that a hearing was required before the termination of certain welfare benefits.
Subsequent to Sniadach, the provisions of CPLR article 71 were reviewed in Laprease, decided in 1970. That article governed New York procedure in replevin actions and permitted prehearing seizure of the subject matter of the action without the intervention or order of a judicial officer. The court pointed out that the section mandated that (the sheriff, upon delivery of an affidavit, undertaking and requisition (wliich is deemed to be the mandate of the court), seize the chattels described in the affidavit. The statute provided for reclamation by the debtor of the property received by filing a notice and undertaking and affidavit with the sheriff.
The court indicated that there was no judicial supervision provided for and that the statute permitted (p. 723) “ the pretrial status quo to be reversed without a hearing or even an ex-parte application to a court or judge,” pointing out that at *771 that juncture there was nothing but the plaintiff’s unexamined allegation that he is entitled to possession.
The court further held that (p. 724) “ Procedural due process requires that notice and an opportunity to be heard be provided the alleged debtor before his property is seized pursuant to Article 71, or at least that the creditor present to a judicial officer the circumstances allegedly justifying 'summary action ” and that prejudgment seizure in a replevin action (p. 725) “ without an order of a judge or of a court of competent jurisdiction [is] unconstitutional.” The defect in the statute arose because of the lack of prior notice and opportunity to be heard, and the lack of what was later, in Mitchell, to be called ‘ ‘ judicial control of the process ” by a State official.
Subsequently, because of Laprease, CPLR 7102 was amended (L. 1971, ch. 1051, § 1, eff. July 2, 1971) “ to conform to the due process of law requirements of the fourteenth amendment to the constitution of the United States ”; and this amendment has very recently been held constitutional by the Appellate Division, Second Department, in Long Is. Trust Co. v. Porta Aluminum Corp. (44 A D 2d 118). In that case, because of lengthy affidavits and oral argument before the court on the motion, the Appellate Division found existent a proceeding before a court sufficient to meet constitutional requirements.
Undoubtedly, the most significant and frequently cited case, at least to date, is Fuentes v. Shevin (supra). There the Supreme Court reviewed the constitutionality of Florida and Pennsylvania replevin statutes, which permitted the summary seizure of goods or chattels in a person’s possession by ex parte application without notice or an opportunity to be heard before the taking. The court found the statutes unconstitutional because of this defect and, also, emphasized the lack of official or judicial participation at any stage of the proceeding under those statutes.
Thus, it appears that the un-constitutionality, found in the statutes struck down, lay in both the lack of notice and opportunity to be heard before deprivation and the lack of the “ judicial control of the process ” previously referred to.
Among the various statutes recently reviewed sections 184, 201, 202 and 204 of the Lien Law [garageman’s lien] were challenged in Hernandez v. European Auto Collision (487 F. 2d 378). The complaint alleged that plaintiff asked defendant to tow his damaged car to defendant’s garage to estimate the cost of repairs, but not to make repairs. He subsequently received an estimate and thereafter was advised that the car had been *772 repaired, although not authorized. He received a demand for payment for repairs and storage charges (in excess of his insurance company’s estimate), and was advised that if the bill was not paid defendant would sell the car and foreclose the garageinan’s lien. (The car was ¡subsequently sold.)
On remand, ¡the District Judge finding “ though the amount of the debt was in dispute, the car was sold without plaintiff’s consent and prior to a judicial ascertainment of the amount owed,” held the sales provision of the statute unconstitutional. While the constitutional aspect of the detention provisions of the statute was not ruled upon in Hernandez as moot, here the fact pattern is different in that the detention continues to date, is a live issue, and relief, possession, is available.
This court agrees ¡that the detention aspect of the statute is indistinguishable in its consequences from the seizure statutes (see concurring opinion, Timbers, J., Hernandez v. European Auto Collision, supra). If it is the deprivation of a tangible property right or a significant property interest ¡that gives rise to the requirement of an opportunity to be heard (Hernandez v. European Auto Collision, supra; Boddie v. Connecticut, 401 U. S. 371; Fuentes v. Shevin, supra), it would seem that the method of deprivation is.immaterial. "Whether the use of property is denied because it is taken away by seizure, or if it is denied because it is withheld from a party’s use by an asserted lien, a deprivation nevertheless occurs.
At this juncture, the court must consider whether the detention provisions of section 7-209 and the sales provision under section 7-210 of the Uniform Commercial Code meet the constitutional due process requirements in the light of Mitchell v. Grant Co. (supra), the most recent applicable decision.
In Mitchell, the court reviewed a Louisiana statute providing for the issuance of a writ of sequestration without prior notice or affording a debtor an opportunity to be heard, upon an order of a Judge. The order is based upon a petition alleging a sale of personal property (a refrigerator, range, stereo and washing machine) and an unpaid balance of the purchase price, and that petitioner had a vendor’s lien on the goods; an affidavit of petitioner; and upon the filing of a bond, a writ was issued. The Louisiana statute provides for sequestration where, among other things, a lien is claimed and the writ shall issue “ only when the nature of the claim * * * the amount * * * and the grounds relied upon * * * clearly appear from specific facts.” (La. Code of Civ. Pro., art. 3501.) A clear showing must be made to a judge who signs an order and a bond must be *773 obtained before the writ issues. “ The writ is obtainable on the creditor’s ex parte application, without notice to the debtor or opportunity for a hearing, but the statute entitles the debtor immediately to seek dissolution * * * unless the creditor * proves the grounds upon which the writ issued,’ * * * the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages ’ ’. (p. 606.) In that case, a motion was made to dissolve the writ. It was stipulated that a vendor’s lien existed and the motion was denied after argument.
In considering the Louisiana procedure as a whole, the court found that it reached a “ constitutional accommodation [between, in that case] of the conflicting interests of the parties.” (p. 607.) It came to that conclusion on the basis of several factors found present. The seller had a vendor’s lien (it was so stipulated) which gave him the right to payment or possession of the goods undiminished in value by further deterioration through use, and he had so sworn; second, there was a risk that “ the buyer, with possession * * * will conceal or transfer the merchandise ” (pp. 608-609); third, there is no need for a final judicial determination before a temporary deprivation of possession; fourth, a balancing of the impact of the deprivation on the one hand mid the inability to make the creditor whole, the risk of destruction, and low risk of a wrongful determination ‘ ‘ through the procedures now employed” (p. 610); and finally, that the debtor “ may immediately have .a full hearing on the matter and possession following the execution of the writ” (p. 610). In addition, a final judgment must be obtained before the property seized can be sold to satisfy the claim (La. Code of Civ. Pro., art. 3510).
It is readily apparent that the factors and controls present in Mitchell are absent in this case. The existence of a lien is in question; the defendant, not plaintiff, has possession, thereby eliminating the risk of transfer or concealment; there are not even sworn ex parte documents submitted to minimize the risk of a wrongful lien; there is no risk of destruction, if notice were given; the statute does not provide for an immédiate hearing or a bond, and no final judgment need be obtained before a sale.
Mitchell, in distinguishing Fuentes, expressly states that the replevin statutes considered there were unconstitutional, “ because carried out without notice or opportunity for hearing and without judicial participation, this kind of seizure was held violative of the Due Process Clause.” (Emphasis supplied.)
Thus, Mitchell stands for the proposition that a hearing must be had before one is finally deprived of his property and that *774 a summary temporary deprivation of possession comports with procedural due process when there is provision for judicial control.
Although Mitchell holds that the due process clause does not require a hearing before property is seized, if other safeguards are provided, and although the nature and particular form of hearing or procedure need not be inflexible so long as it protects substantial rights (Inland Empire Council v. Millis, 325 U. S. 697; Labor Bd. v. Mackay Co., 304 U. S. 333), it is obvious that a statute which makes no provision for any hearing, at any time, or any other judicial control of due process, cannot be said to provide any protection at all against an illegal detention and sale. The failure to so provide renders the subject statutes violative of due process rights and therefore unconstitutional.
The court wishes to note that this is not the first instance in which a statutory lien of this State has been struck down because of its failure to comport with the evolving concepts of due process as enunciated by the XJnited States Supreme Court.
In Blye v. Globe-Weincke Realty (supra) our Court of Appeals found the New York innkeeper’s statutory lien provisions unconstitutional because of lack of prior hearing, or any hearing, and also, the lack of any judicial determination as to the validity of the claimed lien at any time. While Mitchell has since eliminated the need for a preseizure hearing, it reaffirms the necessity of “judicial control of the process from beginning to end.” (p. 616.)
Similarly, Laprease v. Raymours Furniture Co. (supra) considered CPLR article 71 governing replevin actions. The court, prior to Fuentes, found the statute unconstitutional, not only because of the lack of provision for prior hearing, but because prejudgment seizure in a replevin action (p. 725) “ without an order of a judge or of a court of competent jurisdiction [are] unconstitutional ” in that they violate due process requirements. To the extent that the court complained of and found the lack of judicial supervision rendered the statute defective, the decision is consistent with Mitchells holding.
This court has deferred discussion of the only decision in New York directly passing upon the constitutionality of .the sections of the Uniform Commercial Code presently involved. In Magro v. Lentini Bros. Moving & Stor. Co. (338 F. Supp. 464), the court rejected a motion for summary judgment, declaring section 7-210 of the Uniform Commercial Code violative of the Fourteenth Amendment insofar as it permits public sale of bailed goods without prior judicial hearing. In that case, the plaintiff called defendant mover and warehouseman and the *775 goods were moved and stored as requested. Subsequently, defendant served a notice of sale; the bill rendered was not paid, and the goods were sold. Plaintiffs, relying on Sniadach v. Family Finance Corp. (supra) claimed their due process rights were violated by the execution on the statutory lien without first instituting some form of judicial proceeding to determine the validity of the lien and debt.
The decision upholding the statute would, at first, appear determinative of the issue presented. However, the court carefully distinguished Magro from Sniadach in several respects. First, the property was voluntarily and knowingly delivered for a long period of time [the signed contract provided for a minimum period of storage of three months]. The court found that because of this voluntary surrender for a long period of time (p. 468) “ The goods cannot be ‘ specialized ’ as that classification is restricted to those goods, the deprivation of which will drive the debtor ‘ to the wall ’.” The words “ specialized ” and “ to the wall ” are the language of Sniadach.
The property involved herein, on the other hand, being almost all of plaintiff’s household and wordly possessions, would qualify as a deprivation of “ necessaries ” sufficient to drive the plaintiff “ to the wall.” In any event, this necessity doctrine has been put to rest in Fuentes (supra, p. 90) and not being mentioned in Mitchell, is no longer a requirement. This court finds that Magro v. Lentini Bros. Moving & Stor. Co. (supra) under the factual situation here presented and in view of the subsequent impact of Fuentes and Mitchell, is not binding upon it.
CONCLUSION
Upon careful review of the facts and issues presented on this motion and cross motion, and the authorities considered, the court concludes: (a) that the pleading attacked as insufficient adequately poses both a cause of action for replevin and a constitutional issue. The defendants’ cross motion is denied; (b) that sections 7-209 and 7-210 of the Uniform Commercial Code, on their face and as applied herein, deprive plaintiff of her property in violation of her due process constitutional rights, and are unconstitutional. The plaintiff’s motion for partial summary judgment is granted to the extent indicated; (c) that defendants shall not rely upon and employ provisions of the invalidated statutes for retention, advertising or sale of plaintiff’s property; (d) that defendants shall return plaintiff’s property to her or her agent or representative at the defendant’s place of business.